Walworth, Chancellor.
This case presents two important questions in relation to the rights and liabilities of sheriffs and other ministerial officers, in the execution of civil process. The sheriff, after being forbidden by the owner of a house, the outer door of which was shut and fastened only by the ordinary latch, entered the house for the purpose of seizing the goods of the owner upon an execution against him; the family of *438 such owner being in the house, although he was himself outside the door. And the sheriff, having thus entered the house, seized upon and was in the act of removing a part of the goods, when the defendant in this suit, the brother of the owner,-and by his direction, assisted in expelling the sheriff from the house and in preventing the removal of the goods therefrom.
The question whether the defendant in an execution had the right to close the doors of his house against the sheriff, to prevent a levy upon his property, appears to have been a matter of some doubt in England at a very early day. And Fitzherbert has a note of a case said to have been decided as early as 1325, (Fitzherb. Abr. tit. Execucion, pl. 252, H. 18 Edw. 2,) which is in favor of the right of the sheriff to enter the dwelling-house forcibly, to seize goods upon execution. No such case, however, is to be found in the Year-Books of that term ; nor is it stated by Fitzherbert whether the execution was in favor of the king or of a private person. The question came before the court of king’s bench about one hundred and fifty years after-wards, (Year-Books, 18 Edw. 4:,fol. 4 ;) and the decision was against the right of the sheriff to break the defendant’s dwelling-house with a view of levying an execution upon his goods therein. Again, in the latter part-of the reign of Queen Elizabeth, (1602,) in the case of Semayne v. Gresham, (Cro. Eliz. 908, Moor. 668, Yelv. 29, S. C.) the question was presented to the queen’s bench for decision, in a suit brought against the owner of a house who had closed his doors against the sheriff, so that he could not enter to take the goods therein which belonged to the defendant in the execution. Upon the first argument, according to the report of the case by Moore, Popham, C. J., and Mr. Justice Gawdy, relying upon the note of the case in Fitzherbert, were clearly of the opinion that the sheriff might break the door of the dwelling-house to execute the process against the goods. Fenner and Yelvertoñ, the other two justices, being of a contrary opinion,- no judgment was then given. But a fifth judge, Mr. Justice Williams, being appointed in the king’s bench in the first year of James the first, the *439 case was again argued the next year ; and Williams concurring in opinion with Fenner and Yelverton, the decision was made against the sheriff’s right, as reported by Lord Coke. (Semayne's case, 5 Coke, 91.) By this decision, the right to close the outer door of the dwelling-house upon the sheriff when he came with an execution, at the suit of a private person, to levy upon goods, was placed upon the same basis as the right to prevent a similar entry when he came with like process to arrest the person of the defendant; and that appears to have been considered the settled lav of England ever since. It has also been constantly recognized as the common law of the several states of the union where the English common law prevails. Nor does the fact that, the defendant in the execution was not ;n his house at the time urhen the sheriff opened the door and went in contrary to his known will on the subject, alter his rights. For a man’s house is his castle, not for his own personal protection merely, but also for the protection of his family and his property therein, while it is occupied as his residence.
The remaining question is whether a sheriff, who has entered the house of another in direct violation of the law, for the purpose of arresting the owner or seizing his goods, can be justified in consummating the wrong by arresting his person or removing the goods, where it is all one continuous act. I think, upon authority as well as upon principle, he cannot. And I fully concur in the opinion of the learned chief justice of Massachusetts, in the case of Ilsley v. Nichols, (12 Pick. Rep. 270,) upon this question. As a general rule, no person can acquire aright to the custody of the person or the possession of the property of another by his own "illegal act. And I think this would never have been considered an exception to that rule, had not the language of the case cited from the Year-Books been misapprehended. In Semayne’s case, either the counsel, or one of the judges who delivered the opinion of the majority of the court, is represented as saying, “ by Littleton and all his companions it is resolved, that the sheriff cannot break the de ■ *440 fendant’s house by force of a fieri facias, but he is a trespasser by the breaking, and yet the execution which he then doth in the house is good.” But that certainly could not have been intended as a translation of the language of the case in the Year-Book, (18th Echo. 4th.) And Cowper has done great injustice to Lord Mansfield by quoting, as if it was, his own language, a statement of that case which bears no resemblance to the note of the decision as it is in the Year-Book. A very fair translation of the whole case is given by Mr. Metcalfe, in his note to the case of Semayne v. Gresham in Yelverton; which translation does not vary materially from that of Mr. Justice Cowen in the case of The People v. Hubbard, (24 Wend, Rep. 371.) The substance of it is, that the sheriff had an execution against a party in a civil suit who had locked up his goods in a chest in his house ; and the sheriff went and broke open the house and seized the goods and carried them off. The case being stated to the court for its decision whether the sheriff was guilty of a tort, Littleton and his associate judges held that the party injured might have a writ of trespass against the sheriff for breaking his house, notwithstanding the execution; for, as they say, “ the fi. fa. will not excuse him of the breaking of the house, but of the taking of goods only.” Not that it would excuse the sheriff for having taken the goods in this particular case, after he had wrongfully broken into the house where they were. But the words des biens, which, literally translated, is u of the goods,” seem to have led to the erroneous conclusion that the court meant to decide that the taking of the goods in the particular case then stated to the court, was a justifiable act, notwithstanding the breaking of the house to get access to them. In the French and Norman-French languages, the article is frequently used in cases -where we dispense with it. And des, which appears to be a contraction of the preposition de and the article les, is used where we make use of the corresponding preposition only. Thus, the English expression, “ Ihe laws of men,” would, in French, be les lois des hommes- thal is, literally, “ the laws of the men.”
*441 Lord Mansfield, who seems to have taken it for granted, that in the case in the Year-Books the court had decided that the taking of the goods was lawful notwithstanding the illegality, intimates that he would not probably have so decided in a case of the first impression. (Lofft, 381; Cowp. 6.) And it is certain no such question could have arisen in Semayne’s case, as" no goods had been there taken by the sheriff; for it was an action against the owner of the house for shutting his doors and refusing to permit the sheriff to enter and seize the goods. The fact also that in the subsequent case of Yates v. Delamayne, (Bac. Abr. tit. Execution, (N.) note,) the court set aside the levy on an execution, because the sheriff had illegally entered the defendant’s house to execute the, writ, is conclusive to show that it was not then considered as settled law in England that the sheriff had a right to seize the defendant’s goods after having obtained access to them by his own wrongful act. That case, too, appears to have been decided in 1776, only two years after the case of Lee v. Gansel, and while Lord Mansfield continued to preside in the court of king’s bench.'
For these reasons, I think the justices of the supreme court were clearly right in deciding that if the entry of the sheriff in the present case was illegal, the defendant, acting under the direction of the owner, had a right to expel him from the house and to prevent his carrying off the goods. I therefore can see no error in the judgment of the court below, and think that judgment should be affirmed.
The President delivered an oral opinion in favor of an affirmance, and Root, senator, in favor of a reversal of the judgment of the supreme court.
On the question being put, “ Shall this judgment be reversed ?” the members of the court voted as follows :
For reversal: Senators Faulkner, Nicholas, Platt, Rhoades, Root and Works—6.
*442 For affirmance : The President, the Chancellor, and Senators Bartlit, Bockee, Clark, Denniston, Franklin, Johnson, Paige, Ruger, Scott and Varney—12.
Judgment affirmed.